ABRAHAM V. VAN FLEET, JOHN T. BIRD, AND HENRY C. PITNEY, ESQS., VICE-CHANCELLORS.

----

## ABBY A. STORY

*v.*

## MARY E. PALMER et al.

1. By his will, a testator bequeathed and devised the residue of his estate to the executors of the will in trust—"1. That they sell, dispose and convey the same, at public or private sale, at such times and on such terms as they in their, his or her discretion may think proper. 2. That they divide such real and personal property, or the proceeds thereof, into four equal parts or shares, one of such shares for each of my daughters." The trustees were then directed, "To

1

convey, pay and assign" three shares, and to "hold, retain, invest and keep invested" the other share, and collect "the rents, interest and income" arising therefrom, and to pay taxes, assessments, insurance and repairs until the "division or sale."—*Held,* that the testator thereby created an active trust as to the whole of the residue of his estate, in the performance of which the trustees were to determine according to their judgment, exercised in good faith, whether the several parcels thereof should be sold or divided, and then sell or divide according to such determination.

2. A court of equity will not decree a partition urged by one *cestui que trust* and resisted by another, where its effect will be to override and put an end to an active trust and thus defeat the testator's intention, if the trustees stand ready to execute the trust in good faith.

3. Where, however, trustees so disagree as to obstruct a prompt and proper execution of such a trust, or act *mala fide* in its execution, a court of equity will interfere and compel them to properly perform the trust, or will itself execute the trust.

4. Trustees are not disqualified to act by the fact that they are also *cestuis que trustent.*

On bill and answer.

*Mr. Isaac S. Taylor,* for the complainant.

*Mr. William A. Lewis,* for the defendant Mary E. Palmer.

NOTE.—Some judges have gone so far as to say that a *cestui que trust* could not be also trustee of the trust fund, *Craig* v. *Hone, 2 Edw. Ch. 554; Coster* v. *Lorillard, 14 Wend. 265, 354, 380; Farmers Loan and Trust Co.* v. *Carroll, 5 Barb. 613, 643, 652* (case reversed, *4 N. Y. 463*); *Bundy* v. *Bundy, 38 N. Y. 410; Wetmore* v. *Parker, 52 N. Y. 450, 459;* but such a construction of the instrument creating the trust will be avoided, if possible, *Magoffen* v. *Patton, 3 Edw. Ch. 65, 68.*

On the other hand, there are cases to the effect that the *cestui que trust* may be one of several trustees appointed by the donor, *Reid* v. *Reid, 30 Beav. 388; Cocks* v. *Barlow, 5 Redf. 406; Moke* v. *Norrie, 14 Hun 128; Rogers* v. *Rogers, 18 Hun 409, 111 N. Y. 228;* see *Amory* v. *Lord, 9 N. Y. 403; Tiffany* v. *Clark, 58 N. Y. 632;* or, in case of necessity, substituted for the original trustee by a court or by another trustee with a power of appointment, *Clissold's Settlement, 10 L. T. (N. S.) 642; Ex parte Clutton, 17 Jur. 988; Conybeare's Settlement, 1 W. R. 458; Forster* v. *Abraham, L. R. (17 Eq.) 351; Re Lightbody's Trusts, 52 L. T. (N. S.) 40; Kenderdine's Estate, 12 W. N. C. (Pa.) 423.*

A trust estate cannot, ordinarily, be destroyed by a partition thereof among the *cestuis que trustent, Peck* v. *Cardwell, 2 Beav. 137; Swaine* v. *Denby, L. R. (14 Ch. Div.) 326; Cass* v. *Wood, 30 L. T. (N. S.) 670; Murphy* v. *Mason, 22 Grant*

Story v. Palmer.

Rufus Story died on October 6th, 1887, seized and possessed of both real and personal estate. By his will, dated on the 3d of January, 1884, he bequeathed his household furniture, horses and carriages to his widow, absolutely, gave her his homestead for life and directed his executors to invest $100,000 and pay the income to her during her life, and, until such investment should be made, to pay her $4,000 yearly in quarterly payments. And he also empowered the executors to pay the insurance upon and repairs to the homestead and the taxes from time to time assessed against it during his widow's life. He then gave $5,000 to a grandson, to be paid when the grandson should reach the age of twenty-one years. By the fifth paragraph of his will he devised and bequeathed all the rest of his estate, real and personal, including the remainder in the homestead, to his executors, or to such of them as should qualify, the survivors and survivor of them—

"In trust" [using the language of the will] "and to and for the purposes following, that is to say: 1. That they sell, dispose of and convey the same, at public or private sale, at such times and on such terms as they in their, his or her discretion may think proper. 2. That they divide such real and personal estate, or the proceeds thereof, into four equal parts or shares, one of such

*Ch. 405; Hill* v. *Jones*, 65 Ala. 214; *Pennybacker* v. *Leary*, 65 Iowa 220; *Avery* v. *Payne*, 12 Mich. 540; *Temple* v. *Hammock*, 52 Miss. 360; *Cubbage* v. *Franklin*, 62 Mo. 364; *Hunt* v. *Wright*, 47 N. H. 396; *Stryker* v. *Lynch*, 11 N. Y. Leg. Obs. 116; *Baldwin* v. *Humphrey*, 44 N. Y. 609; *Morse* v. *Morse*, 35 N. Y. 53; *Thebaud* v. *Schemerhorn*, 10 Abb. N. C. 72; *Coleman* v. *Coleman*, 19 Pa. St. 100, 23 Pa. St. 393; *Brown* v. *Lutheran Church*, 23 Pa. St. 495; *Naglee's Estate*, 52 Pa. St. 154; *Ruffell's Estate*, 11 Phila. 46; *Laishaw's Appeal*, 122 Pa. St. 142; *Gregory* v. *Gates*, 30 Gratt. 83; see *Boyd* v. *Allen*, L. R. (24 Ch. Div.) 622; *Hughes* v. *Devlin*, 23 Cal. 507; *Jackson* v. *Deese*, 35 Ga. 84; *Hunter* v. *Stoneburner*, 92 Ill. 75; *Locke* v. *Barbour*, 62 Ind. 577; *Holmes* v. *McGee*, 27 Mo. 597; *Dow* v. *Jewell*, 18 N. H. 340; *Sawyer* v. *Sawyer*, 61 N. H. 50; *Wetmore* v. *Zabriskie*, 2 Stew. Eq. 62; *Prentice* v. *Janssen*, 79 N. Y. 478; *Hoyle* v. *Huson*, 1 Dev. 348; *Cole* v. *Cregon*, 1 Hill Ch. 311; *Reilly* v. *Whipple*, 2 S. C. 277; *Kennedy* v. *Badgett*, 19 S. C. 591; and, in some States, there are statutes governing the matter, *Morgan's Succession*, 2 Rob. (La.) 354; *New Orleans* v. *Baltimore*, 13 La. Ann. 162.

There may be a partition among several devisees where one share devised is held in trust, *Haddon* v. *Hemingway*, 39 Mich. 615; *Cheeseman* v. *Thorne*, 1 Edw. Ch. 629; *Gallie* v. *Eagle*, 65 Barb. 583; *Waln's Appeal*, 4 Pa. St. 502; see *McBrown* v. *Dalton*, 70 Cal. 89; *Pell* v. *Ball*, *Speer's* Eq. 518.—Rep.

shares for each of my daughters, Mary Elizabeth Palmer, Emily L. Parret, Alice Rowland and Abby Story."

He then directed the executors to charge the share of Mrs. Parret with certain sums of money theretofore advanced by the testator to her husband, which, subsequently, by a codicil to the will, made in April, 1887, were fixed at $49,539.28, and to "convey, pay and assign" the shares of his daughters, Mary Elizabeth Palmer, Alice Rowland and Abby Story, to them, absolutely, and to "hold, retain, invest and keep invested" the share of his daughter Emily L. Parret, and to "collect and receive and pay or apply the rents, interest and income" to her use for life and transfer the principal to her issue at her death. By the sixth paragraph of the will he empowered his executors to pay all taxes and assessments that might be imposed upon his property until the "sale *or* division" thereof, and to lease the real estate until "such sale *or* division."

"And" [following the language of the will] "to make all divisions and partitions of my real and personal estate, or the proceeds thereof; also to make, seal, execute and deliver all necessary deeds or other instruments in writing."

He appointed his widow, Ursula Story, his daughters, Alice Rowland and Mary Elizabeth Palmer, executrices, and his friends Elias J. Herrick and Dwight P. Cruikshank, executors of the will. With the exception of Mr. Herrick, the persons appointed have duly qualified as executrices and executor. The bill, which was filed by the testator's daughter, Abby Story, in March, 1888, alleges that her father's real estate is worth about $1,000,000, and gives reasons why, in the exercise of a sound judgment, it would be better to partition than to sell it, and also alleges that the executrices and executor disagree upon the question whether the land should be sold or divided; the executrix Mary E. Palmer insisting that it shall be sold while the others insist that it shall be divided, and it objects that the interest of two of the executrices as *cestuis que trustent* unfits them for the proper discharge of their duties as trustees. The bill prays for a partition of the real estate by this court or for a partition of it

by the executrices and executor under the direction and control of the court. The executrices and executor who have qualified, the husband of Mrs. Rowland, Mrs. Parret and her husband and children and the husband of one of her daughters, are made defendants to the bill. Of the defendants, Mary E. Palmer alone replies, answering so far as to deny that she resists a proper partition of the real estate, and allege that she is ready to sell it, and complain that her co-executrices and executor will not join in such sale, and demurring to the relief sought by the bill. The case has come to hearing upon the bill and answer.

THE CHANCELLOR.

This case presents two questions, first, whether, notwithstanding the trusts created by the will and the protest of the defendant Mary E. Palmer, the court will partition the real estate at the instance of the complainant; and, second, whether, under the circumstances of the case, as they appear by the bill and answer, it will compel the trustees to proceed to a division of the estate.

It may be stated as the established rule, that while this court will recognize equitable titles and deal with them in its proceedings, it will not decree a partition urged by one *cestui que trust* and resisted by another, where its effect would be to override and put an end to active trusts and defeat the testator's intention. Before equitable owners may have partition carrying the legal estate, they must be entitled to call for that legal estate.

In *Taylor* v. *Grange, L. R. (13 Ch. Div.) 223*, a testator devised his lands to trustees to permit his widow to occupy the homestead and collect the rents, issues and profits of the remainder and pay them to his three daughters during their lives, and at their death to divide the lands among their issue as directed by the will. They were also directed to work a quarry upon a portion of the lands and construct roads to it over other portions of the lands, and to dispose of the profits of the quarry as directed. One of the daughters asked for partition. It was denied by Mr. Justice Fry, upon the ground that it would be overriding an active trust. Upon appeal (*L. R. (15 Ch. Div.) 165*) this decision was affirmed, Lord Justice James remarking: " This

testator has imposed trusts upon the property, as to which there is no person in existence capable of putting an end to them, supposing the tenant for life desired to have those trusts carried into effect. Under those circumstances, it appears to me that we should, by granting this partition, be destroying the will of the testator, and in fact be making a new disposition of the property for him." And Lord Justice Cotton saying: " The difficulty is not simply that there is a legal estate outstanding, but there are active trusts to be performed which may for some purpose require, in order that the testator's intention should be carried into effect, that the property should remain as an entirety in the trustees during the continuance of those trusts, and the persons seeking a partition are not in a position, having regard to their estates and interests, to put an end to those trusts. Therefore they must take the property subject to the testator's will, and to the trusts which he has directed to be performed." In *Biggs* v. *Peacock, L. R. (22 Ch. Div.) 284* (on appeal from Vice-Chancellor Bacon, *L. R. (20 Ch. Div.) 200*), a testator directed the trustees under his will, at such times and in such manner as they should think fit, to sell his copy-hold estate and hold the proceeds in trust for his widow for life, and after her death for his children. He left six children, all of whom obtained a vested interest and were *sui juris*. The widow and three children brought suit for partition of the estate, and the other children, who were the defendants, demurred, and Lord Justice Cotton said : " This is a trust for conversion into money, not a power, and one object of its creation was to enable the property to be divided when the proper time arrived ; and any one of the children has a right to insist upon that object being carried out." The vice-chancellor's decree denying the partition was affirmed. In *Gerard* v. *Buckley, 137 Mass. 475*, a partition was denied when asked for by all parties in interest because it would defeat the testator's intention. Mr. Justice Allen there said : " The estate is given to executors in trust, not only to sell, and invest and pay over proceeds of sales, but to receive and expend rents and profits, to manage and improve the lands, and dedicate streets to the public. All the parties in interest now desire a partition of

the land, and many considerations have been urged, with much force, to show that, in the condition of things as they exist ten years after the death of the testator, his intentions would be promoted by devesting the trustees of the legal estate. But neither the wishes of the devisees, nor the lapse of time, nor changes in the situation of the property, can affect the construction of the will, or change the intention of the testator manifested in it, or the estates given by it. It is the intention that he had, not that he might now have, which must be carried out, and the titles given by the will when it took effect must be protected." And in our State, in *Outcalt* v. *Appleby, 9 Stew. Eq. 73,* Chancellor Runyon declared that this court will not annul a trust created by will, which charged trustees with the care and supervision of real estate and left its conversion to their discretion. And in *Read* v. *Patterson, 17 Stew. Eq. 211, 219,* in the court of errors and appeals, Mr. Justice Depue said : " Where the power is coupled with a trust or duty, the court will enforce a proper and timely exercise of the power ; but if it be given upon a trust to be exercised in the discretion or upon the judgment of the trustee, the court will not interfere with the trustee's discretion in executing the trust, unless he has exercised his discretion *mala fide.*"

The apparently contradictory directions of the will before me have engendered doubts as to the intended scope of the trust created, and it is therefore proper here to ascertain what the trust is, and whether it is within the protection of the rule just stated. By the fifth paragraph of the will a seemingly imperative direction for the sale and conveyance of the real and personal estate of the testator is followed by an equally absolute order for either the division of that estate or of the proceeds of the sale of it. The first doubt suggested is, as to whether the direction to sell is absolute, in the sense that it must be complied with ; and the second is, whether, if sale is resorted to, it must embrace the entire estate, or may be limited by the trustees to one or more parcels of it. The bare perusal of the will satisfies me that the testator intended to leave it to the sound judgment of his trustees whether sale should be resorted to. He directs a division of the estate or of the proceeds thereof. If he had intended the

order to sell to be absolute, he would have confined the contemplated division to the proceeds of sale. Here the direction is in the alternative, to divide either the estate or the proceeds of its sale. Following this is the direction to the executors to "convey, pay and assign" three of the shares. The use of the word "convey," apt to pass realty, and the word "assign," usual in the disposition of personalty not reduced to money, must strongly negative the idea of an absolute direction for conversion, and the provision that the executors shall "hold" the share of Mrs. Parret and apply "the rents, interest and income" to her use, bears in the same direction. But the sixth paragraph of the will, I think, fully determines this question. There the testator gives authority to his executors to pay taxes and assessments upon his property until the "sale *or* division" of it, and to lease or rent any of his real estate until "such sale *or* division." The disjunctive "or," here used, declares an intention that the direction for sale is not absolute. The executors are either to sell or to divide, as, in their judgment, it may appear the best interests of their *cestuis que trustent* require.

The second doubt, whether, if sale is resorted to, it must embrace the entire estate, or may be limited by the trustees to parcels, has been somewhat more difficult to solve. It can hardly be conceived that so keen a business man as the testator evidently was, possessed of real estate valued at more than a million of dollars, and divided into numerous tracts, as the bill indicates, would limit a power of sale to the disposition of his property as an entirety. The proposition is so at variance with the dictates of good common sense that I would most unwillingly accept it as a proper construction of the will. The will does not in express language forbid the sale of portions of the estate, nor does it in such language require that when the determination of the trustees is arrived at, it shall be a conclusion to either sell or divide the entire estate. On the contrary, in the latter part of the sixth paragraph it gives authority to the trustees to make "divisions" and "partitions" of real and personal estate "or the proceeds thereof," and "also to make deeds," necessary in the premises. These words are in the plural, and I think plainly

evince an intention that parcels shall be dealt with. There are to be "partitions" and "divisions" and "deeds." The partitions and divisions are to be not only of the estate, but also of the proceeds of the sale of it. That is, parcels of the estate shall be either divided or sold, and if sold, the proceeds of sale shall be divided. But, in addition to this, the will provides that the executors shall "convey, pay and assign" the shares of three of the daughters, and "hold, retain, invest and keep invested" the share of the fourth daughter, and "collect and receive and pay or apply the rents, interest and income" arising therefrom for the use of that daughter. These are proper words for the disposition of specific property, real and personal, and also of moneys. It is true, if a division of the testator's real and personal estate should be determined upon, these words would be applicable to the property divided, but if the insistence is correct, that the executors must sell the entire estate, if they sell at all, and the executors should determine to sell, all these words would be inapplicable to the disposition of mere money, for money is not conveyed, nor do rents arise from it. I think that there is clearly enough in the will to indicate, notwithstanding the seeming direction to either divide or sell the entire estate, that the testator intended the direction and authority to sell or divide to be applicable to the whole and to the several parcels of his estate, and that the executors must determine as to the whole of the estate and as to portions of it whether there shall be division or sale, and then proceed to sell and divide, or sell or divide, as in their sound discretion may be best. I conclude, then, that the trust under this will is an active one, contemplating that the executors shall first determine to what extent they shall sell, and to what extent they shall divide, and then carry their determination into effect, so that the estate may be disposed of with reasonable expedition. As it was his purpose that his executors should perform these duties, a partition by this court would defeat that intention and to that extent override the will and the trust it creates. Each *cestui que trust* is entitled to the benefit of the judgment of the trustees upon all questions of sale or division after the trustees shall consider the very reasons that are now urged by the bill to

persuade this court that partition is advisable. And not only are the *cestuis que trustent* entitled to the judgment of the tribunal that the will creates, upon these questions, but also upon all subordinate questions arising in the administration of the trust after these inquiries shall have been settled. If the trustees stand ready, in good faith, to execute their trust according to the spirit and intent of this will, this court will not, against the protest of a *cestui que trust,* interfere.

This brings me to the second question that this case presents, whether, under these circumstances, as they now appear, I should compel the executors to divide the real and personal property. The bill and answer unmistakably show at least a spirit of disagreement between the trustees. Notwithstanding the answering defendant's assurance that her purpose is to properly carry out the trust, the insistence of her answer, that the remaining trustees will not agree to a sale, indicates some obstinacy of opinion upon her part. The disagreement does not, however, appear to be so serious as to justify the court's interposition. If it should go so far as to become an obstruction to the reasonably prompt and proper performance of the trust, it will be the duty of the court to interfere, either by compelling the trustees to perform their duty, or by itself executing the trust. *2 Perry Trusts* §§ *276, 473, 816.* Justice Depue, in *Read* v. *Patterson,* above cited, said: "A court of equity will examine into the conduct of a trustee in the execution of his discretionary powers, and will assume control over the trustee's conduct, and if need be will take upon itself the execution of the trust. But the court will exercise this prerogative with great caution, and will not displace the trustee from exercising his functions unless, upon a consideration of the reasons and grounds upon which he has acted, it appears that he has abused his trust, and that his acts in the premises have not been within the limits of a sound and honest execution of the trust."

The bill in this case was filed within a few months of the death of the testator. The estate is a very large one. The trustees need time for consideration, and it appears to me that, before the bill was filed, sufficient time was not allowed them to agree

as to the execution of the trust. It is to be expected that trustees, especially where the estate is large, will have temporary disagreements as to the proper methods of executing the trust. Reasonable time must be allowed them to ascertain and consider the elements that should influence and control their judgment. If, after such time, the trustees in this case should remain obstinately, or by conviction, irreconcilably divided in opinion, it will be the duty of the court to interfere.

The fact that two of the trustees are also *cestuis que trustent* does not disqualify them from carrying out the trust, although it may possibly lead to conflict between their duty and their interest. *1 Perry Trusts* § *297.* A sale of the property, it is true, as tending to increase their commissions as trustees, may influence their judgment in determining whether the property should be sold, yet this is offset by the incentive that their interest will create to obtain the best prices possible for the property that may be sold. Besides this, manifest manipulation of the trust for the mere sake of commissions will not only entitle a *cestui que trust* to the interposition of this court, but also to the condemnation of the probate court when it is called upon to fix those commissions.

Upon these considerations, the present bill must be dismissed.